STATE OF CONNECTICUT *v.* GLENYS RIOS
(AC 29109)

McLachlan, Harper and Foti, Js.

Argued June 2—officially released September 23, 2008

*Marjorie Allen Dauster*, senior assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Ronald Dearstyne*, senior assistant state's attorney, for the appellant (state).

*James B. Streeto,* assistant public defender, for the appellee (defendant).

*Opinion*

HARPER, J. The state, with the permission of the trial court,[1] appeals from the judgments of the court dismissing four charges brought against the defendant, Glenys Rios, following her successful completion of a period of accelerated rehabilitation. The state claims that the court abused its discretion in granting accelerated rehabilitation to this defendant because (1) the accelerated rehabilitation statute, General Statutes § 54-56e, could not properly be applied to the defendant because she allegedly committed the crimes at issue during two separate and unrelated incidents occurring approximately one month apart, and (2) there was no basis to conclude that the defendant probably would not offend in the future. We affirm the judgments of the trial court.

The record reveals the following pertinent facts and procedural history. On November 18, 2004, the defendant was charged in docket number CR-04-24808, with one count of larceny in the sixth degree in violation of General Statutes § 53a-125b, and one count of conspiracy to commit larceny in the sixth degree in violation of General Statutes §§ 53a-125b and 53a-48. On December 14, 2004, the defendant was charged in docket number CR-04-25103 with one count of larceny in the sixth degree in violation of General Statutes § 53a-125b, and one count of conspiracy to commit larceny in the sixth degree in violation of General Statutes §§ 53a-125b and 53a-48.

---

[1] General Statutes § 54-96 provides: "Appeals from the rulings and decisions of the Superior Court, upon all questions of law arising on the trial of criminal cases, may be taken by the state, with the permission of the presiding judge, to the Supreme Court or to the Appellate Court, in the same manner and to the same effect as if made by the accused."

The defendant later applied for accelerated rehabilitation with regard to the charges in both files. At a hearing on July 14, 2005, the court canvassed the defendant to determine her eligibility for accelerated rehabilitation. The court also instructed the defendant to provide notice of her application to the victims of her crimes. The court continued the matter until July 28, 2005, at which time the state set forth the factual basis of the charges. The prosecutor represented that the charges arose out of two unrelated incidents of shoplifting that occurred on two separate dates and at two separate retailers. The first incident occurred on November 18, 2004, at a Kohl's in Plainville, when the defendant and a female coconspirator took merchandise with a total value of $229.59, with the defendant taking merchandise with a total value of $138. The second incident occurred on December 14, 2004, at a Wal-Mart in Bristol, when the defendant and a female coconspirator took DVDs with a total value of $59.52.

The defendant's attorney represented that the defendant was a thirty year old single mother who was raising her three children and earning a modest living. He represented that prior to the incidents at issue, she did not have a criminal record. He stated that with regard to the incident at Kohl's, the defendant had attempted to leave the store while wearing two or three shirts that she did not pay for. With regard to the incident at Wal-Mart, he represented that it was the defendant's friend who took the DVDs but that the defendant, in a panic, had attempted to conceal the wrappings that her friend had removed from the DVDs.[2] The prosecutor replied that he had spoken with the defendant following her arrest and that she had stated that she was aware that her friend was attempting to take the DVDs without

[2] The prosecutor referred to the fact that the defendant was attempting to conceal the "sensor cases" that contained the DVDs at issue.

paying for them and that she had concealed the wrappings from the DVDs in an effort to assist her friend in this criminal act.

The prosecutor objected to the applications for accelerated rehabilitation on two grounds. First, the prosecutor argued that the defendant could not avail herself of accelerated rehabilitation with regard to the crimes arising out of *two* separate incidents. The prosecutor argued that the statute did not apply because the two separate incidents had occurred approximately one month apart and involved separate victims. The prosecutor also relied on the fact that the defendant had been arrested separately with regard to each incident. The prosecutor opined that the accelerated rehabilitation statute could be applied in situations in which a defendant committed several crimes "on one night or over a couple of days where there [are] a number of victims" but that it did not apply when crimes had been committed "a month apart." Second, the prosecutor argued that the statute did not apply because there was no basis for the court to find that the defendant probably would not offend in the future. In support of this argument, the state relied on the allegation that the defendant had shoplifted on two separate occasions, the second occasion following her first arrest, within one month.

The defendant's attorney argued that the accelerated rehabilitation statute could be applied to the crimes arising out of the incidents at issue, which were temporally separated by approximately one month. The defendant's attorney referred to his client's lack of a criminal record prior to these incidents and attempted to persuade the court that the defendant's involvement in the second incident was not criminal in nature. The court stated that there was "no question" that the defendant was involved in both of these incidents. Indicating that

it agreed in some measure with the state's legal argument, the court commented that it was an "absolute stretch" to apply the accelerated rehabilitation statute to these crimes. The court, nonetheless, granted the defendant's applications.[3] The court placed the defendant on probation for a term of two years and, as a special condition of probation, required her to complete 225 hours of community service. On July 24, 2007, upon the defendant's successful completion of probation, the court dismissed the charges and granted the state's request for permission to file the present appeal.[4] This appeal followed.[5]

"The granting or denial of an application for accelerated rehabilitation implicates the exercise of discretion by the trial court. . . . The exercise of legal discretion imparts something more than the granting to the trial court of the right to have leeway in decision making. . . . Rather, the exercise of legal discretion requires that it be exercised in conformity with the spirit of the law and in a manner to subserve and not impede or defeat the ends of substantial justice. . . .

[3] The court subsequently signed a transcript of its ruling, thereby bringing its decision into compliance with Practice Book § 64-1.

[4] Although the court did not file a signed transcript of this ruling in accordance with Practice Book § 64-1, its failure to do so does not in any way affect our ability to review the claims raised in this appeal as the unsigned transcript from the proceeding clearly reflects the basis of the court's ruling. See *State* v. *James*, 93 Conn. App. 51, 57 n.6, 887 A.2d 923 (2006).

[5] In *State* v. *Angelo*, 25 Conn. App. 235, 239–40, 594 A.2d 24, cert. denied, 220 Conn. 911, 597 A.2d 335 (1991), this court held that the state does not have a right to appeal immediately from the decision of a trial court granting a defendant's application for accelerated rehabilitation. Relying on relevant Supreme Court precedent concerning the finality of judgments, this court held that the state's right to appeal from a court's decision to award accelerated rehabilitation does not ripen until such time as the court dismisses the charges against the defendant. Id., 240. The defendant urges us to reconsider this decision and, apparently, the authority on which it is based, in favor of permitting an immediate right to appeal from a decision to grant accelerated rehabilitation. We decline to reconsider this court's earlier holding and, in light of that holding, deem the appeal to be timely.

"Our review of the trial court's exercise of its discretion is limited to the questions of whether the court correctly applied the law and whether it could reasonably conclude as it did. . . . It is only where an abuse of discretion is manifest or where an injustice appears to have been done that a reversal will result from the trial court's exercise of discretion. . . . Every reasonable presumption will be given in favor of the trial court's ruling." (Citations omitted; internal quotation marks omitted.) *State* v. *Angelo*, 25 Conn. App. 235, 240–41, 594 A.2d 24, cert. denied, 220 Conn. 911, 597 A.2d 335 (1991).

I

First, the state claims that the court abused its discretion in granting accelerated rehabilitation because the accelerated rehabilitation statute, § 54-56e, could not properly be applied to the defendant because she allegedly committed the crimes at issue during two separate and unrelated incidents occurring approximately one month apart.[6] We disagree.

[6] At the hearing on July 24, 2007, the prosecutor informed the court that at the time the court granted the applications for accelerated rehabilitation, the state objected to the court's ruling on legal grounds and expressed its intent to appeal from that decision at the appropriate time. The prosecutor stated: "Today, of course, is the appropriate time. [The defendant] has completed [accelerated rehabilitation]. So, I would ask the court to dismiss each case. Then the state would ask for permission to take the appeal." The court stated that the defendant had successfully completed her probation and was "entitled to a dismissal by statute." The court granted the state's request for permission to file an appeal.

The defendant claims that she did not request that the court dismiss the charges but that the court's ruling to dismiss the charges was prompted by the state's request. The defendant claims that this court should decline to review the state's claim that the trial court misinterpreted the accelerated rehabilitation statute because the state induced the court to exercise its discretion to dismiss the charges, the judgment from which the state appeals.

"[T]he term induced error, or invited error, has been defined as [a]n error that a party cannot complain of on appeal because the party, through conduct, encouraged or prompted the trial court to make the erroneous ruling. . . . It is well established that a party who induces an error cannot be heard to later complain about that error. . . . This principle bars appel-

The claim raises an issue of statutory interpretation to which we afford plenary review. See *State* v. *Casiano*, 282 Conn. 614, 620, 922 A.2d 1065 (2007). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding

late review of induced nonconstitutional and induced constitutional error." (Internal quotation marks omitted.) *State* v. *Maskiell*, 100 Conn. App. 507, 514, 918 A.2d 293, cert. denied, 282 Conn. 922, 925 A.2d 1104 (2007). The invited error doctrine rests on principles of fairness, both to the trial court and to the opposing party. See *State* v. *Fabricatore*, 281 Conn. 469, 482, 915 A.2d 872 (2007).

Here, the state unambiguously indicated that it disagreed with the court's decision to grant the defendant's applications for accelerated rehabilitation, both at the time the court made that decision and at the time the court dismissed the charges. The state proffered a cogent legal argument in opposition to the court's ruling. When the defendant appeared before the court on July 24, 2007, the state asked for, and was granted, permission to appeal from this ruling. Although the prosecutor asked the court to dismiss the charges against the defendant, it is very clear from the context of this request that the prosecutor did so for the purpose of ripening the state's right to take an appeal. The court, without appearing to rely on the state's request, dismissed the charges, stating that the defendant was entitled to such a remedy by operation of the statute. Under these circumstances, it cannot be said that the state prompted the court to make the ruling of which it complains, that the ruling was the product of an improper strategy employed by the state or that the state has in any measure ambushed either the trial court or the defendant by raising this claim on appeal.

its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *State* v. *Koczur*, 287 Conn. 145, 152–53, 947 A.2d 282 (2008).

Section 54-56e (a) provides: "There shall be a pretrial program for accelerated rehabilitation of persons accused of a crime or crimes or a motor vehicle violation or violations for which a sentence to a term of imprisonment may be imposed, which crimes or violations are not of a serious nature." As relevant, § 54-56e (b) sets forth conditions on which the statute may be applied, and § 54-56e (c) restricts the class of persons to whom the statute may be applied. Section 54-56e (f) provides that if a defendant has been granted accelerated rehabilitation and successfully has completed his period of probation, "such defendant may apply for dismissal of the charges against such defendant and the court, on finding such satisfactory completion, shall dismiss such charges. . . ." See also *State* v. *Parker*, 194 Conn. 650, 658, 485 A.2d 139 (1984) ("[t]he only right that the defendant may earn under the accelerated rehabilitation statute is the right to a dismissal of the charges against him, a right that is expressly conditioned on satisfactory completion of the period of probation").

The pivotal statutory language is the term "crime or crimes" as appears in § 54-56e (a). Prior to the passage of Public Act 93-138, § 54-56e applied to "persons accused of a *crime* or a motor vehicle violation for which a sentence to a term of imprisonment may be imposed, which *crime* or violation is not of a serious nature. . . ." (Emphasis added.) This court has interpreted the word "crime," as used in this earlier version of § 54-56e, to encompass charges that arose out of "a single criminal act or transaction, out of which one or

more criminal charges might arise." *State* v. *Tyler*, 6 Conn. App. 505, 510, 506 A.2d 562 (1986); see also *State* v. *Angelo*, supra, 25 Conn. App. 241. In *Tyler*, this court reasoned that the legislature's use of the phrase "a crime," a phrase in the singular, signaled a restriction on the court's discretion. *State* v. *Tyler*, supra, 509. The court reasoned that the statute's grant of discretion to the trial court, and not to the prosecutor, to invoke accelerated rehabilitation and the fact that the statute also referred to the dismissal of "such charges," weighed in favor of its interpretation that "a crime" could encompass several charges arising out of a single transaction. Id., 511.

The state argues that the current revision of § 54-56e, which governs this case and includes the phrase "crime or crimes," is ambiguous, especially in light of this court's interpretation of the statute before it was amended by Public Act 93-138. The state further argues that a review of the relevant legislative history supports its assertion that the statute cannot be applied to persons accused of crimes that are not related temporally or are otherwise clearly connected.

The focus of our inquiry is on the language of § 54-56e. Subsection (a) refers to "accelerated rehabilitation of persons accused of *a crime or crimes* . . . ." (Emphasis added.) General Statutes § 54-56e (a). In relevant part, General Statutes § 1-1 instructs: "(a) In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly." We conclude that the legislature's use of the singular, "crime," and plural, "crimes," unambiguously reflects the legislature's intent that the statute may in the court's discretion be invoked with respect to a defendant accused of either one crime or multiple

crimes, regardless of whether those crimes are tempo-
rally or otherwise related.

In *Tyler*, this court viewed the phrase "a crime" as
a restriction on the class of persons to whom the statute
may be applied. *State* v. *Tyler*, supra, 6 Conn. App. 509.
That interpretation of what constitutes a "crime" is
instructive. Logically, we are compelled, in light of that
interpretation, to conclude that the phrase "a crime or
crimes" expanded the class of persons to whom the
statute may be applied. Consistent with our prior inter-
pretation of the statute, we interpret the revised statute,
and its use of the plural, "crimes," to apply to persons
who stand accused of charges arising out of more than
one criminal act or transaction.

The statute contains numerous and specific limita-
tions with regard to the persons to whom accelerated
rehabilitation could be applied, but there is nothing in
the text of any portion of the statute that restricts its
application in the manner suggested by the state. Mind-
ful that the legislature has so carefully delineated the
class of defendants to whom the statute may be applied,
we have no basis on which to restrict the scope of the
legislation beyond those restrictions that plainly appear
in the text of the statute. "A cardinal rule of statutory
construction is that where the words of a statute [or
rule] are plain and unambiguous the intent of the [draft-
ers] in enacting the statute [or rule] is to be derived
from the words used. . . . We are constrained to read
a statute as written . . . and we may not read into
clearly expressed legislation provisions which do not
find expression in its words . . . ." (Citation omitted;
internal quotation marks omitted.) *Bank of New York*
v. *National Funding*, 97 Conn. App. 133, 140–41, 902
A.2d 1073, cert. denied, 280 Conn. 925, 908 A.2d 1087
(2006), cert. denied sub nom. *Reyad* v. *Bank of New
York*, 549 U.S. 1265, 127 S. Ct. 1493, 167 L. Ed. 2d 229
(2007). We are unaware of any related statute or statutes

contradicting this interpretation and are convinced that the text of the statute reveals a meaning that is plain and unambiguous and that does not yield an absurd or unworkable result. Accordingly, we have no need to accept the state's invitation to review the relevant legislative history.

The statute properly may be applied to a person accused of multiple crimes regardless of a connection, temporal or otherwise, between such crimes. We reject the state's claim that the court's application of the statute reflected a misconception of the law.

## II

Second, the state claims that the court's decision to grant accelerated rehabilitation to the defendant reflected an abuse of discretion because there was no basis on which to conclude that the defendant probably would not offend in the future.[7] We disagree.

Section 54-56e (b) provides in relevant part: "The court may, in its discretion, invoke such [accelerated rehabilitation] program . . . with respect to a defendant (1) who, the court believes, will probably not offend in the future . . . ." The statute, thus, requires the court to form a belief concerning a defendant's probable conduct in the future. Neither the statute nor our case law sets forth a test by which to evaluate the

---

[7] The defendant argues that this claim is not reviewable because it falls outside of the ambit of General Statutes § 54-96, which restricts the state in this criminal appeal to "questions of law . . . ." See footnote 1. The defendant argues that this claim challenges a discretionary ruling of the trial court and does not raise a question of law. Our Supreme Court has interpreted § 54-96, noting that the "dominant intention of the legislature [in enacting the statute] was to extend the right of appeal to the state . . . ." *State* v. *Avcollie*, 174 Conn. 100, 110, 384 A.2d 315 (1977). As the court noted, the limitation on the state's right of appeal is expressed in the provision requiring the state to obtain the permission of the trial court as a prerequisite to appeal. Id., 109. The defendant's suggestion that the statute in any manner restricts the *type* of claims that may be raised by the state is not supported by any relevant authority.

454

court's determination in this regard. Logically, such a determination must be reached on the basis of the facts and circumstances before the court that are relevant to predicting such future conduct. See *State* v. *Lavorgna*, 37 Conn. Sup. 767, 778, 437 A.2d 131 (1981) ("use of the [accelerated rehabilitation] program [is] discretionary with the court and . . . such discretion must be exercised not only in reviewing the qualifications of the offender but also in considering the nature of the particular offense and the circumstances of its commission" [internal quotation marks omitted]).

As set forth previously, we will reverse the court's decision to grant accelerated rehabilitation only when an abuse of discretion is manifest or when an injustice appears to have been done. Affording every reasonable presumption to the court's ruling, in light of the facts brought before the court concerning the defendant, the nature of the offenses with which she stood charged and the circumstances surrounding the commission of those offenses, we do not conclude that the court's decision reflected an abuse of discretion.

The judgments are affirmed.

In this opinion the other judges concurred.